IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02566-RMR-KLM

SUSAN HANEY,

      Plaintiff,

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss Claim in Part** [#25] (the "Motion"). Plaintiff filed a Response [#31] in opposition to the Motion [#25], and Defendant filed a Reply [#32]. The Motion [#25] has been referred to the undersigned for Recommendation pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72. *See* [#26]. The Court has reviewed the Motion [#25], the Response [#31], the Reply [#32], the entire case file and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#25] be **GRANTED**.

## I. Background

      Plaintiff alleges the following facts as the basis for her claims.[1] In 1993, Plaintiff obtained her license to practice medicine as a board-certified obstetrician-gynecologist.

_____

[1] For the purposes of resolving the Motion [#25], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#11]. *See Shero v.*

*Am. Compl.* [#11] ¶ 7.  Plaintiff is the beneficiary of a long-term disability insurance policy (the "Policy") issued by Defendant for the Women's Clinic of Northern Colorado (the "Clinic").  *Id.* ¶ 5.  She has been a member of the insured class of "all eligible physicians" under the Policy at all times since she enrolled in the plan on July 1, 2014.  *Id.* ¶¶ 5, 8.

Under the Policy, an insured member who is eligible to receive long-term disability benefits receives a monthly disability benefit equal to 60% of her "Basic Monthly Earnings" (the "BME").  *Id.* ¶ 17.  Defendant calculates the BME by using the beneficiary's gross annual income, "includ[ing] commissions, bonuses, and employee contributions to [d]eferred [c]ompensation plans," and dividing that amount by twelve.  *Id.* ¶¶ 18-19.  Employees make contributions to deferred compensation plans or arrangements under sections of the Internal Revenue Code via salary reduction agreements with the Clinic.  *Id.* ¶ 20.

The Clinic maintains a pension plan, i.e., the PC Cash Balance Plan (the "CBP"), for employees such as Plaintiff.  *Id.* ¶ 13.  When the Clinic purchased the Policy, its Executive Director and practice manager, Scott Kenyon ("Kenyon"), confirmed with a representative of Defendant that employee contributions to the CBP would count as employee contributions to a deferred compensation plan for the purposes of calculating income.  *Id.* ¶¶ 10, 12.  In 2018, Plaintiff contributed $100,000 to the CBP, an amount she otherwise would have received as a bonus.  *Id.* ¶ 11.

On September 10, 2019, Plaintiff suffered an episode of transient global amnesia and a substantial increase in migraine symptoms.  *Id.* ¶ 14.  Plaintiff experienced

---

*City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006)).

retrograde memory loss and was unable to identify the current year during the event.  *Id.*  An aneurysm was also later discovered.  *Id.*  After the event, Plaintiff was unable to continue working as a physician, due to the risk of recurrent amnesia and the need to avoid sleep deprivation.  *Id.*

Plaintiff submitted a long-term disability claim to Defendant on November 20, 2019.  *Id.* ¶ 15.  Defendant approved Plaintiff's claim by mail on February 21, 2020, including an explanation of its calculation of her monthly disability benefit.  *Id.* ¶ 16.  In the explanation, Defendant stated that it had calculated Plaintiff's BME as $12,097.32, relying on her 2018 gross annual salary information.  *Id.* ¶¶ 21, 23.  The calculation showed that Defendant had included a 2018 annual bonus of $25,167.88.  *Id.* ¶ 24.  However, it did not include the $100,000 contribution that Plaintiff made to the CBP in 2018, nor her semi-monthly income of $756.73 paid to her as a part of her gross salary.  *Id.* ¶¶ 25-26.

While Defendant stated that it had fully approved her claim, Plaintiff alleges that Defendant miscalculated her benefit by excluding those two amounts, and thereby partly denied her claim without explanation.  *Id.* ¶¶ 27, 29.  Consequently, on March 31, 2020, Plaintiff appealed Defendant's decision, stating that her BME should amount to $21,944.11.  *Id.* ¶ 29.  A representative of Defendant, Stephanie Smith ("Smith"), responded by email on April 1, 2020, notifying Plaintiff that Defendant was declining to recalculate her disability benefit.  *Id.* ¶ 30.

Plaintiff filed a second appeal of Defendant's decision relating to her claim on July 6, 2020.  *Id.* ¶ 33.  With this appeal, she included an affidavit from Mr. Kenyon, stating that when the Clinic purchased the Policy, he confirmed that employee contributions to the CBP would be included as a component of the employee's BME for the purposes of

calculating monthly disability benefits.  *Id.*  Plaintiff also included an affidavit from a Certified Public Accountant ("CPA") and fraud examiner, Mika Schneider ("Schneider"). *Id.* ¶ 34.  After evaluating the Policy and Plaintiff's salary information, Ms. Schneider concluded that Plaintiff's BME should have included the amount that Defendant had omitted, asserting that the proper BME amount should be $21,944.11.  *Id.*

On July 10, 2020, Ms. Smith requested that Plaintiff provide a Third Party Authorization to Disclose Personal Information (the "Authorization Form") that would allow Defendant to share information with Plaintiff's counsel.  *Id.* ¶ 36.  Plaintiff delivered the Authorization Form to Defendant on August 3, 2020.  *Id.* ¶ 37.  By September 22, 2020, seventy-eight days after Plaintiff had submitted her second appeal, Defendant had not yet responded, although the Policy stated that Defendant would respond no later than forty-five days after its receipt of appeals.  *Id.* ¶ 38.  On September 23, 2020, Ms. Smith emailed Plaintiff, stating that, although Defendant received notice of her appeal on July 7, 2020, it would not have been accepted as a proper notice of appeal until August 4, 2020, when the Authorization Form was received.  *Id.* ¶ 39.  However, at the time when the Authorization Form was received, Ms. Smith had "missed the fact that there was an appeal previously submitted" on July 6, 2020, leading her to further delay addressing the appeal.  *Id.*

On October 5, 2020, Ms. Smith emailed Plaintiff again, stating that based on the information Plaintiff provided with her most recent appeal, Defendant had found that its original calculation of her monthly benefit was correct.  *Id.* ¶ 42.  Attached to this correspondence was a letter from Ms. Smith, dated October 2, 2020, which did not include reference to the affidavits that Plaintiff had provided.  *Id.* ¶¶ 42-43.  Ms. Smith's letter

further included a statement stipulating that if Plaintiff disagreed with Defendant's decision, she could submit a written appeal within 180 days of receipt of the denial.  *Id.* ¶ 46.

Plaintiff submitted a third appeal of Defendant's decision on October 26, 2020, attaching the same affidavits from Mr. Kenyon and Ms. Schneider.  *Id.* ¶ 47.  On November 17, 2020, Defendant notified Plaintiff that it had retained an accountant to perform an independent financial review and sent her the accountant's report.  *Id.* ¶ 48.  Defendant advised Plaintiff that she could respond to the report on or before December 2, 2020, and that otherwise it would render its decision based on the information it had in her file.  *Id.* Plaintiff responded on December 2, 2020, stating that the "financial review arbitrarily categorize[d] certain . . . earnings as non-earnings," and that it contained non-sequiturs, unreasonably reaching conclusions favorable to Defendant.  *Id.* ¶ 49.

After Plaintiff sent this letter, she and Defendant corresponded several more times.  *See id.* ¶¶ 50-53.  Defendant stated that the information Plaintiff provided "[did] not support that the $100,000 [was] an employee contribution to a deferred compensation plan" under the Policy and requested additional documents for further review.  *Id.* ¶¶ 50-51.  Based on the additional documents Plaintiff subsequently provided, Defendant's CPA, Judy Bogdanovich ("Bogdanovich"), stated that the CBP appeared to include both employee and employer contributions.  *Id.* ¶¶ 52-53.  Ms. Bogdanovich further concluded that the CBP did not allow for voluntary employee contributions and that the $100,000 could have been an employer contribution.  *Id.* ¶ 53.

On January 27, 2021, Defendant sent a letter to Plaintiff, declining to recalculate her BME and monthly benefit amount.  *Id.* ¶ 54.  Further, it stated that "at this time, all

administrative rights to appeal have been exhausted" and that it "[would] conduct no further review of the claim." *Id.* Plaintiff sent a letter on June 29, 2021, again explaining how Defendant's decision was flawed, and on June 30, 2021, Defendant repeated that it would not conduct a further review of her claim or appeal. *Id.* ¶ 56.

On September 22, 2021, Plaintiff initiated this action, asserting two claims for relief under the Employee Retirement Income Security Act ("ERISA"). *See Am. Compl.* [#11]; 29 U.S.C. § 1132. In her First Claim for Relief, Plaintiff seeks, pursuant to § 1132(a)(1)(B) of ERISA, to recover benefits she argues are due to her, to enforce her right to a proper calculation of benefits, and to clarify her rights to future benefits under the Policy. *See Am. Compl.* [#11] ¶¶ 59-70. In her Second Claim for Relief, Plaintiff seeks, in the alternative, (1) injunctive relief, (2) equitable surcharge, (3) equitable estoppel, and (4) other appropriate equitable relief, pursuant to § 1132(a)(3) of ERISA. *See id.* ¶¶ 72-78. Defendant filed the present Motion [#25] seeking dismissal of Plaintiff's Second Claim for Relief. Defendant argues that, because Plaintiff has not and cannot plead sufficient facts to support her claim for equitable relief under § 1132(a)(3), she has failed to state a claim on which relief can be granted and that, therefore, the claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Motion* [#25] at 2.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d

1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully." *Id.* (citation omitted). To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.      Legal Framework**

"ERISA protects employee pensions and other benefits by providing insurance[,] . . . specifying certain plan characteristics in detail[,] . . . and by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans."  *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (citing 29 U.S.C. § 1104).  Under § 1132 of ERISA, a beneficiary of such a benefit plan may bring an action to enforce provisions of ERISA or terms of the plan.  The beneficiary may bring a claim under § 1132(a)(1)(B) "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  A beneficiary may also bring a claim under § 1132(a)(3) "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The United States Supreme Court has held that § 1132(a)(3) is a "catchall" provision that functions as a safety net, "offering *appropriate* equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy."  *Varity Corp.*, 516 U.S. at 512 (emphasis added).  Equitable relief is not appropriate "where Congress elsewhere provided adequate relief for a beneficiary's injury."  *Id.* at 515; *see also Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 826 (10th Cir. 2003) (holding that

"consideration of a claim under 29 U.S.C. § 1132(a)(3) is improper when the [plaintiff] . . . states a cognizable claim under . . . § 1132(a)(1)(B) . . ."); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016) ("Courts have . . . interpreted *Varity* [*Corp.*] to mean that equitable relief under § 1132(a)(3) is not available if § 1132(a)(1)(B) provides an adequate remedy.").

Defendant argues that, because Plaintiff's injury could be adequately remedied under § 1132(a)(1)(B), her claims under § 1132(a)(3) must be dismissed. *Motion* [#25] at 6-7. Plaintiff counters that the cases cited by Defendant only "address the summary judgment stage of ERISA litigation, and . . . are thus inapposite to the relief [D]efendant seeks by motion to dismiss." *Response* [#31] at 3. According to Plaintiff, these cases "[do] not preclude a plaintiff from asserting both claims [under § 1132(a)(1)(B) and § 1132(a)(3)] as forms of alternative relief at the pleading stage." *Id.* at 2-3. The Court disagrees. Although Defendant cites some cases that adjudicate this issue at the summary judgment stage, Plaintiff fails to recognize the plethora of cases that address claims such as her own at the motion to dismiss stage. *See, e.g.*, *Sliwinski v. Aetna Life Ins. Co.*, No. 17-cv-01528-RM-MEH, 2018 WL 4697310, at *12 (D. Colo. Mar. 2, 2018) (dismissing plaintiff's claim under § 1132(a)(3), because it was duplicative of her claim under § 1132(a)(1)(B)); *Powers v. BlueCross Blue Shield of Ill.*, 947 F. Supp. 2d 1139, 1143-44 (D. Colo. 2013) (dismissing the plaintiffs' claim under § 1132(a)(3), because what the plaintiffs were actually alleging was that benefits were wrongfully denied); *Ihde v. United of Omaha Life Ins. Co.*, No. 17-cv-00847-RM-NYW, 2017 WL 5444551, at *7 (D. Colo. Nov. 14, 2017) (recommending that the defendant's motion to dismiss the plaintiff's claim under § 1132(a)(3) be granted); *Holbrooks v. Sun Life Assur. Co. of Can.*, No. 11-

1383-JTM, 2012 WL 2449850, at *2-3 (D. Kan. June 26, 2012) (granting motion to dismiss, finding that the plaintiff's claim under § 1132(a)(3) was a repackaged version of her claim for denial of benefits under § 1132(a)(1)(B)).

As stated above, in the alternative to her claim under § 1132(a)(1)(B), Plaintiff seeks (1) injunctive relief, (2) equitable surcharge, (3) equitable estoppel, and (4) other appropriate equitable relief under § 1132(a)(3).  *See Am. Compl.* [#11] ¶¶ 72-78.  The Court addresses each in turn.

**B.    Injunctive Relief**

In her Second Claim for Relief, Plaintiff "requests an Order enjoining [D]efendant from violating the terms and conditions of the plan and its funding policy and violating ERISA . . . ."  *Am. Compl.* [#11] ¶ 73.  Defendant seeks to dismiss this part of Plaintiff's claim because she cannot plausibly allege that she has suffered an irreparable injury or that she does not have an adequate remedy at law.  *Motion* [#25] at 8; *Reply* [#32] at 3-4.  Moreover, Defendant argues that Plaintiff has requested what amounts to a "follow-the-law" injunction, which is not permitted.  *Motion* [#25] at 8-9; *Reply* [#32] at 5.

For Plaintiff to establish a viable claim for injunctive relief, she must plead sufficient facts showing:

> (1) that [she] has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Peters v. Aetna Inc.*, 2 F.4th 199, 238 (4th Cir. 2021) (citation omitted); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).  Plaintiff has neither sufficiently alleged that she has suffered an irreparable injury, nor that she lacks an

adequate remedy at law.  The injury she alleges in her Amended Complaint [#11] is that Defendant has violated the terms of the Policy, which has ultimately resulted in the miscalculation of Plaintiff's monthly benefits.  *See Am. Compl.* [#11] ¶¶ 73, 77-78.  The alleged miscalculation of her benefits could be adequately remedied should she be successful in her claim for benefits under § 1132(a)(1)(B).  *See id.* ¶¶ 60-70.  It thus follows that her injury is not irreparable.  Therefore, Plaintiff has not alleged sufficient facts to state a plausible claim for injunctive relief.

Defendant further argues that, in addition to being unable to allege sufficient facts to show an irreparable injury or a lack of adequate remedy at law, Plaintiff's claim for injunctive relief fails because "an injunction must be more specific than a simple command that the defendant obey the law."  *Motion* [#25] at 8-9 (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).  "Courts have declined injunctive relief where the injunction sought is of such an indeterminate character that an enjoined party cannot readily determine what conduct is being prohibited."  *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012) (citing *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief.")).

"Because parties are entitled to 'receive fair and precisely drawn notice of what [an] injunction actually prohibits,' injunctions must 'describe in reasonable detail . . . the

act or acts restrained or required.'" *Brady*, 902 F. Supp. 2d at 1284 (quoting *Calvin Klein*, 824 F.2d at 669; Fed. R. Civ. P. 65(d)(1)(C)).   A request for injunctive relief that seeks nothing more than to require defendants to "'compl[y] with ERISA regulations and [p]lan terms[,]' [is] broad and indeterminate [and] falls into the category of 'a general "obey the law" type of injunction that . . . court[s] [are] loathe to enter.'"  *Talbot v. Reliance Standard Life Ins. Co.*, No. CV-14-00231-PHX-DJH, 2015 WL 4134548, at *10 (D. Ariz. June 18, 2015), *aff'd*, 790 F. App'x 129 (9th Cir. 2020) (citation omitted); *see also In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 221 (D. Conn. 2007) (granting motion to dismiss prayer for injunctive relief "enjoining Defendants from continuing to violate their fiduciary duties under ERISA and the plan documents . . .").

As noted above, Plaintiff simply "requests an Order enjoining [D]efendant from violating the terms and conditions of the plan and its funding policy and violating ERISA . . . ."  *Am. Compl.* [#11] ¶ 73.  As such, the Court finds that the injunctive relief Plaintiff seeks is of such a broad and indeterminate character that it fails to put Defendant on reasonable notice of what precise conduct is restrained or required.  *See Motion* [#25] at 8-9; Fed. R. Civ. P 65(d)(1)(C).  Although Plaintiff had the opportunity in her Response [#31] to clarify what it is precisely that she seeks with injunctive relief, she failed to provide such clarification.  *See Response* [#31] at 4-6; *Reply* [#32] at 5.  To the contrary, Plaintiff's reiteration of her request in the Response [#31] was even more ambiguous.   *See Response* [#31] at 4-6; *Reply* [#32] at 5.  Plaintiff states that she "does not seek the type of permanent injunctive relief" that Defendant discusses in the Motion [#25].  *Response* [#31] at 4.  However, aside from "order[ing] [D]efendant not to engage in [the same]

conduct in the future with regard to [Plaintiff's] claim[,]" she does not state what exactly it is that she *does* seek.[2]  *Id.* at 5.

Plaintiff avers that she seeks "the proper use of injunctive relief in the ERISA context, including in the form of a surcharge." *Id.* at 4.  She argues that, because the Supreme Court in *CIGNA Corporation v. Amara*, 563 U.S. 421 (2011), "did not focus on the abstract elements of permanent injunction addressed in a case like *Monsanto* [*Company v. Geertson Seed Farms*, 561 U.S. 139 (2010)][,]" which Defendant cites, those elements apply neither in her case nor in the ERISA context overall.  *Id.*  The Court rejects this argument.  *Peters v. Aetna Incorporated*, 2 F.4th at 238, as cited above, is an ERISA case which applies the elements for injunctive relief in the context of permanent enjoinders.  These elements are exactly those outlined in *Monsanto*, 561 U.S. at 156-57.  If Plaintiff requests a permanent enjoinder, as she apparently does in her Amended Complaint [#11], then the above elements are exactly those which would be used to test the sufficiency of her claim.  *Id.* ¶ 73.  Furthermore, in her Response [#31], Plaintiff seems to conflate injunctive relief in the form of an enjoinder and that in the form of equitable surcharge, which she requests separately in her Amended Complaint [#11] and which the Court discusses in more detail below.  *Response* [#31] at 4-5; *compare Am. Compl.* ¶ 73 *with id.* ¶ 75.

In her request for an enjoinder, Plaintiff fails to clearly and specifically delineate the exact conduct she seeks to require or prohibit, only requesting that Defendant stop violating ERISA and the terms of the Policy.  *See id.* ¶ 73.  The request ultimately amounts

---

[2]  With this rather vague request, Plaintiff appears to ask that Defendant recalculate her benefits, a claim which, as mentioned above, would be fully remedied by her claim for benefits under § 1132(a)(1)(B).

to a vague request that Defendant "follow the law," which is too broad and indeterminate. *Talbot*, 2015 WL 4134548, at *10.  However, Plaintiff may be able to cure the deficiencies in her pleading on leave to amend.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that "[if] it is at all possible that a party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend").  Therefore, to the extent that Plaintiff's Second Claim for Relief seeks injunctive relief, the Court **recommends** that it be **dismissed without prejudice**.  *Id.*

## C.    Equitable Surcharge

Defendant next argues that Plaintiff's claim under § 1132(a)(3) for equitable surcharge to prevent Defendant's alleged unjust enrichment is duplicative of her claim for benefits under § 1132(a)(1)(B) and therefore must be dismissed.  *Motion* [#25] at 9. Courts of equity had the power to provide a monetary remedy, called a surcharge, against a trustee "for a loss resulting from [the] trustee's breach of duty, or to prevent the trustee's unjust enrichment."  *Amara*, 563 U.S. at 441-42 (citation omitted).  Before the merger of law and equity, relief in the form of a surcharge was "exclusively equitable."  *Id.* at 442 (citation omitted).  Under § 1132(a)(3), remedy in the form of a surcharge "fall[s] within the scope of the term 'appropriate equitable relief . . . .'"  *Id.*

"[F]or a plaintiff to recover under § 1132(a)(1)(B) and § 1132(a)(3), she must suffer an 'injury *separate and distinct* from the denial of benefits or where the remedy afforded by Congress under § 1132(a)(1)(B) is otherwise shown to be inadequate.'"  *Ihde*, 2017 WL 5444551, at *7 (quoting *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015)) (original emphasis omitted; emphasis added); *see also Lefler*, 72 F. App'x at

-14-

826 (recommending dismissal of the plaintiffs' claims under § 1132(a)(3), finding that the plaintiffs had stated a cognizable claim under § 1132(a)(1)(B)); *Sliwinski*, 2018 WL 4697310, at *11 (dismissing the plaintiff's claim under § 1132(a)(3), finding it to be duplicative of her claim under § 1132(a)(1)(B)); *Powers*, 947 F. Supp. 2d at 1143-44 (dismissing the plaintiffs' breach of fiduciary duty claim, finding that what the plaintiffs were actually alleging was that benefits were wrongfully denied); *Holbrooks*, 2012 WL 2449850, at *1-2 (finding that the plaintiff "ha[d] not presented alternative claims for relief, but ha[d] submitted the claim of a denial of benefits in a slightly repackaged format" and that his § 1132(a)(3) claim would not "provide grounds for relief 'if it turn[ed] out that [he] [did] not have a vested right to benefits'").

Plaintiff argues that she may bring claims simultaneously under § 1132(a)(1)(B) and § 1132(a)(3) in the alternative, as long as she does not seek duplicate recovery of benefits. *Response* [#31] at 3. While this is true in theory, Plaintiff cannot simply repackage the same claim for benefits under § 1132(a)(1)(B) as a claim for equitable relief under § 1132(a)(3), even in the alternative. In such a situation, "there is no alternative basis to recover those withheld benefits." *Ihde*, 2017 WL 5444551, at *8.

Plaintiff avers that she has properly raised her claim for equitable surcharge in the alternative because it seeks to compensate her for Defendant's breach of fiduciary duty or unjust enrichment, the former of which she does not allege in the Amended Complaint [#11]. *See Response* [#31] at 3. The Court agrees with Defendant that this is an implausible argument. *Motion* [#25] at 9-10; *Reply* [#32] at 5 n.2. If Defendant is found to have calculated Plaintiff's monthly benefits correctly, it will not have breached an (unalleged) breach of fiduciary duty, nor will it be unjustly enriched. *Motion* [#25] at 10;

*Reply* [#32] at 5 n.2.   Similarly, if Defendant is found to have miscalculated Plaintiff's benefits, she would be properly compensated under her claim for benefits under § 1132(a)(1)(B), rendering her claim for equitable surcharge superfluous.   *Motion* [#25] at 10.

 The surcharge Plaintiff seeks, if granted, would be in the amount of $5,908.08 per month.   *Am. Compl.* [#11] ¶ 75.   According to Plaintiff, this amount is "the difference between the proper monthly benefit amount of $13,166.47 and the amount currently being paid by [D]efendant of $7,258.39."   *Id.*   Plaintiff argues that while the amount of damages overlaps in theory with the amount she could recover under § 1132(a)(1)(B), she has properly presented this claim for an equitable surcharge as an alternative form of relief under *Amara*, 563 U.S. at 441.   *Response* [#31] at 3.   However, *Amara* is distinguishable from this case.   In *Amara*, the plaintiff was seeking revision of the terms of an employee pension plan, which was not authorized under § 1132(a)(1)(B), but was authorized under § 1132(a)(3).   563 U.S. at 424-25.   In contrast, Plaintiff is not seeking a revision of the terms of the Policy as a part of her claim for equitable relief, nor another form of relief that would ultimately be non-monetary in nature.   *Am. Compl.* [#11] ¶¶ 30-32.   Although it is true that monetary relief in the form of a surcharge is a traditional form of equitable relief, *Amara*, 563 U.S. at 441, Plaintiff cannot "complain[] of a wrongful denial of benefits under ERISA and simply include[] a claim seeking [an] equitable remedy on [the] same facts." *Sliwinski*, 2018 WL 4697310, at *9.

 In her request for equitable surcharge under § 1132(a)(3), Plaintiff is expressly seeking the same amount of money that she would receive if she is successful on her First Claim for Relief under § 1132(a)(1)(B).   *Am. Compl.* [#11] ¶ 75; *Response* [#31] at

3.  This demonstrates that Plaintiff is attempting to repackage her claim for benefits under § 1132(a)(1)(B) as a claim for equitable surcharge under § 1132(a)(3), rendering the latter claim duplicative.  Because this defect is unlikely to be cured on leave to amend, to the extent Plaintiff's Second Claim for Relief seeks equitable surcharge, the Court **recommends** that it be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 126.

## D.  Equitable Estoppel

Defendant argues that Plaintiff's claim for equitable estoppel fails because she cannot plead the required element of detrimental reliance and because her claim is not based on extraordinary circumstances or ambiguity.  *Motion* [#25] at 11-12.  The Court finds it unnecessary to address these arguments because Plaintiff's claim for equitable estoppel fails on the ground that it is duplicative of her claim for benefits under § 1132(a)(1)(B).

Equitable estoppel is a traditional equitable remedy that "operates to place the person entitled to its benefit in the same position [she] would have been in" had she not detrimentally relied on false representations made to her.  *Amara*, 563 U.S. at 441 (citation omitted).  Although estoppel is an equitable remedy available under § 1132(a)(3), *see id.* at 443, as stated above, Plaintiff cannot simply repackage the same claim for benefits under § 1132(a)(1)(B) as a claim for equitable relief under § 1132(a)(3).  *See Ihde*, 2017 WL 5444551, at *7; *Lefler*, 72 F. App'x at 826; *Sliwinski*, 2018 WL 4697310, at *11; *Powers*, 947 F. Supp. 2d at 1143-44; *Holbrooks*, 2012 WL 2449850, at *1-2.  In her Amended Complaint [#11], Plaintiff "requests an Order of estoppel, preventing [D]efendant from calculating [her] [BME] to the exclusion of the $100,000 contribution to a deferred compensation plan and the $756.73 semi-monthly payment."  *Id.* ¶ 74.  If this

request were to be granted, Plaintiff's BME would be calculated to be $21,944.11 and her monthly benefit amount would be $13,166.47. *Id.* ¶¶ 29, 64. This is exactly the amount she would receive if she is successful on her claim for benefits. *Id.* ¶ 64. Plaintiff's request for equitable estoppel under § 1132(a)(3) is wholly duplicative of her claim for benefits under § 1132(a)(1)(B). Because this defect is unlikely to be cured on leave to amend, similarly to her request for equitable surcharge, to the extent Plaintiff's Second Claim for Relief seeks equitable estoppel, the Court **recommends** that it be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 126.

**E.    Other Equitable Relief**

Plaintiff additionally seeks "appropriate equitable relief to compensate her for [D]efendant's wrongful conduct of miscalculating her benefit amount unreasonably and in bad faith, delaying her claim administration[,] . . . arbitrarily and capriciously terminating her right to further appeal, and otherwise acting in an arbitrary and capricious manner during her claim administration." *Am. Compl.* [#11] ¶ 76. Defendant argues that "any underpayment . . . would be fully remedied under Plaintiff's First Claim for Relief." *Motion* [#25] at 14. The Court agrees that Plaintiff's request for other equitable relief to compensate her for the alleged miscalculation of her benefits fails because is duplicative of her claim for benefits under § 1132(a)(1)(B).

Defendant further argues that "there is no right of recovery with respect to alleged 'delay' damages." *Id.* Defendant relies on the Supreme Court's decision in *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 148 (1985), for the assertion that "Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing

of benefit claims." *See Motion* [#25] at 14.  Plaintiff argues that Defendant cannot rely on *Russell* because it applies only to claims brought for breach of fiduciary duty under § 1109(a) of ERISA.  *Response* [#31] at 8.  It is true that the Court in *Russell* "reserved the question of whether any provision other than § [1109(a)] authorize[s] recovery of extra-contractual damages."  *Johnson v. Dist. 2 Marine Eng'rs Beneficial Ass'n-Associated Mar. Officers, Med. Plan*, 857 F.2d 514, 518 (9th Cir. 1988).  However, the Supreme Court confirmed in *Mertens v. Hewitt Associates*, 508 U.S. 248, 255-56 (1993), that, under § 1132(a)(3), the phrase "other appropriate equitable relief" is limited to traditional equitable remedies such as injunction, mandamus, and restitution and "preclude[s] 'awards for compensatory or punitive damages.'"  *See also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1234 (10th Cir. 2002) ("To the extent we read [plaintiff's] complaint as seeking . . . monetary compensation for economic or other harm suffered because of the delay in his receipt of his benefits . . . those remedies are not available under ERISA.").  Plaintiff's claim for other equitable relief to compensate her for the delay in the processing of her appeal fails because it constitutes a request for extra-contractual compensatory damages, which is not permitted under § 1132(a)(3).

Further, Defendant contends that "Plaintiff's own allegations make implausible the supposed 'termination' of her appeal rights" because she was given the opportunity to appeal Defendant's determination of her monthly benefit under the Policy, during which the parties "engaged in an extended exchange of information."  *Motion* [#25] at 14.  Under ERISA, Plaintiff is not guaranteed the right to more than one appeal.  *See* 29 U.S.C. § 1133(2) ("[E]very employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . of the

decision . . . ."). Therefore, after Plaintiff's three appeals of Defendant's calculation of her benefits, Defendant was permitted under ERISA to terminate Plaintiff's ability to appeal the decision further. Furthermore, as explained above, Plaintiff is not entitled to extra-contractual compensatory damages for the termination of her appeals process under § 1132(a)(3). *Mertens*, 508 U.S. at 255-56.

Lastly, Plaintiff seeks "redress for [D]efendant's violations of ERISA and related regulations" and "enforcement of the terms of the plan and the proper calculation of her monthly benefits." *Am. Compl.* [#11] ¶¶ 77-78. Under § 1132(a)(1)(B), Plaintiff would be able "to enforce her right to a proper benefit calculation under the terms of the plan" and "to clarify her rights to future benefits under the terms of the plan." *Id.* ¶¶ 61-62. Plaintiff's injury would be adequately redressed by the remedies available under § 1132(a)(1)(B), and thus her claim under § 1132(a)(3) is duplicative.

Plaintiff's requested relief of extra-contractual compensatory damages is unavailable as equitable relief under § 1132(a)(3). *Mertens*, 508 U.S. at 255-56. Moreover, the other equitable relief she seeks is wholly duplicative of her First Claim for Relief. *See Motion* [#25] at 14. Plaintiff would not be able to cure these defects in her pleadings on leave to amend. *See Reynoldson*, 907 F.2d at 126. Therefore, to the extent that Plaintiff seeks other appropriate equitable relief, the Court **recommends** that the Second Claim for Relief be **dismissed with prejudice**. *Id.*

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#25] be **GRANTED**. The Court **recommends** that the Second Claim for Relief be **dismissed without prejudice** to the

extent it seeks injunctive relief.  The Court **recommends** that the Second Claim for Relief be **dismissed with prejudice** to the extent it seeks equitable surcharge, equitable estoppel, and other equitable relief.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 15, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge